TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00148-CV






GTE Southwest, Incorporated, Appellant



v.



Public Utility Commission of Texas; GE Capital Rescom;


and MultiTechnology Services, L.P., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 96-09155, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING








DISSENTING OPINION






 Technological leaps have altered telecommunication markets and prompted changes
in governmental regulatory policies. Instead of regulating monopolies granted to a few companies,
the Public Utilities Commission is now charged with promoting competition among diverse service
providers. Implementing this new charge, the Commission ordered GTE to revise its tariff to
ensure reasonable, nondiscriminatory bases for decisions affecting access to customers by alternate
service providers. The majority concludes that the Commission has overreached. Because the
majority ignores the Commission's new responsibility and powers, I respectfully dissent.

DISCUSSION


 I believe that the Commission has the power and duty to make this order, that any
taking is statutorily and constitutionally permissible, and that GTE's points of error should be
overruled.


The Commission has the power.

 The majority concludes that the Commission lacks the power to require GTE to
revise its tariff to establish a procedure for considering whether to collapse multiple demarcation
points to a single point. I believe that the Public Utility Regulatory Act of 1995 empowers and
virtually compels the Commission to make the disputed order.

 The legislature placed an imposing duty on the Commission, but granted it
concordantly broad and flexible powers. The Utilities Code directs the Commission to promote
diversity of telecommunications providers and interconnectivity and to encourage a fully
competitive telecommunications marketplace. Tex. Util. Code Ann. § 51.001(a) (West 1998). 
The legislature recognized that telecommunications is an industry "that does not lend itself to
traditional public utility regulatory rules, policies, and principles." Id. § 52.001(b). The
Commission therefore must develop rules, policies, and principles to protect the public interest
and "provide equal opportunity to each telecommunications utility in a competitive marketplace." 
Id. The legislature also wrote that


[T]he strength of competitive forces varies widely between markets, products, and
services. It is the policy of this state to require the commission to take action
necessary to enhance competition by adjusting regulation to match the degree of
competition in the marketplace to:


(1) reduce the cost and burden of regulation; and 


(2) protect markets that are not competitive.


Id. § 51.001(e). The Commission also "has the general power to regulate and supervise the
business of each public utility within its jurisdiction and to do anything specifically designated or
implied by this title that is necessary and convenient to the exercise of that power and
jurisdiction." Id. § 14.001.

 In addition to these general policy statements and conferrals of broad powers,
several specific statutes indicate the Commission can require GTE to revise its tariff to establish
a procedure for collapsing multiple demarcation points to a single point. (1) The Commission must
ensure that public utilities charge and receive just and reasonable rates. Tex. Util. Code Ann.
§ 53.003(a). The Commission can order the revision of unreasonable rates. Id. § 53.151. The
definition of "rate" includes tariffs. Id. § 11.003(14). The public utilities the Commission
governs may neither grant an unreasonable preference or advantage to a person in a classification
nor subject a person in the classification to an unreasonable prejudice or disadvantage. Id.
§§ 53.003(c), 55.005. Nor can public utilities engage in a practice that tends to restrict or impair
competition. Id. § 55.006. The Commission can also adopt just and reasonable standards, rules,
or practices a public utility must follow in furnishing a service. Id. § 55.002.

 GTE's actions justify the Commission's use of its authority to require that GTE
have a procedure regarding relocation of the demarcation points. A single demarcation point near
the property line enhances competition because competitors can offer alternative service to the
property owner at a more competitive rate only by using the existing cable starting at the property
line, rather than duplicating the capital expenditure of laying their own cable. GTE has no set
policy regarding relocation of demarcation points. As a result, it consented to relocation on one
property, then refused to relocate on others, with no distinction evident except a change in
decision-makers. Thus, the customers in one apartment complex got access to competitive
alternate service providers, but those in the other complexes remain essentially isolated from the
market. Uncertainty inhibits competition, but the outright refusal to relocate squelches it by
increasing the costs to competitors of reaching new customers. The Commission could not ignore
the legislature's clear directive that it eliminate unreasonable discrimination and enhance
competition.


The taking is permissible.

 The majority concludes that the Commission has taken GTE's property. I question
whether a taking has occurred, in part because of the nature of GTE's property interest in the cable
and in part because of the nature of the order. I also conclude that the order allows adequate
compensation if any taking occurs.

 GTE's property interest in the cables is limited. It owns the cables because, as the
local exchange company, it laid them in the passing era of local telephone service monopolies. 
The cables are not main local exchange lines, but cables that traverse the landowners' property to
connect apartment buildings to the main line. GTE does not claim that it could exclude the
competitors from using the cable on the landowners' side of the multiple demarcation points, nor
does it propose that it could exclude the competitors from connecting to the local exchange main
lines located adjacent to the property. GTE does not claim the right to exclude others from the
land surrounding its cables; in fact, it invites competitors to lay their own cables across the land
to connect to the local exchange main lines--a prospect of dust and destruction that the property
owners dislike. It claims exclusionary rights only to the stretch of cable traversing the building
owners' land between the demarcation points for each building to the edge of the property.

 The majority's opinion appears premature because the Commission neither orders
the transfer of cable nor requires that GTE surrender the right to exclude others from the use of
its cable. The Commission's order requires GTE to reformulate its tariff to govern GTE's
decisions on the relocation of demarcation points in a reasonable and nondiscriminatory manner. 
GTE may formulate its tariff in a way that allows it to refuse to relocate demarcation points in a
reasonable and nondiscriminatory manner; the reformulation of its tariff, then, would not deprive
GTE of anything. Only when the required reformulation causes the surrender of cable, its right
to exclude others from that cable, or some other property right, will there be a taking. Until GTE
completes the "interim oppression of a tariff-revision proceeding" (as described by the majority)
we cannot know whether the tariff revision will cause a taking of GTE's property.

 Because the tariff presumably will require GTE to allow relocation of the
demarcation point under certain circumstances as yet unknown, I will examine whether such a
taking is permissible. As discussed above, the Commission has the statutory authority and
responsibility to alter tariffs that unreasonably inhibit competition. There is substantial evidence
to support the conclusion that denying competitors access to the existing cable unreasonably
inhibits their ability to compete by imposing unreasonably large costs on them. Evidence also
supports the conclusion that the laying of duplicative cable will impose the unnecessary
externalities of disruption and destruction of landscape on the residents of the complexes.

 The Commission is within its statutory and constitutional limits to order this taking.
As discussed above, the new Utilities Code compels the removal of unreasonable impediments to
competition. Evidence supports the conclusion that the denial of access to the existing cable was
unreasonable and discriminatory when compared with the allowance of access at a similar
complex. Evidence also supports the conclusion that GTE should be allowed to recoup its
investment in laying the existing cable; the rearrangement fee provides the compensation to make
any taking statutorily and constitutionally acceptable. (2) The statutes that compel access for
competitors also require that existing carriers not be unfairly treated. See Tex. Util. Code Ann.
§§ 52.001, 52.054(a)(2). The federal and state constitutions allow the government to take private
property so long as the owner is compensated for its loss. U.S. Const. amend. V ("private
property [shall not] be taken for public use without just compensation."); Tex. Const. art I, § 17
("No person's property shall be taken, damaged or destroyed for or applied to public use without
adequate compensation being made . . . .") (emphases added). The Commission's order lets GTE
charge a rearrangement fee necessary to move the demarcation points. GTE can assess its own
expenses in formulating that rate. The Commission clearly has the authority to evaluate the
reasonableness of rates charged. See Tex. Util. Code Ann. § 53.003(a). Should the
Commission's assessment of GTE's valuation leave GTE unsatisfied, GTE has recourse to judicial
review. Id. § 15.001; cf. Gulf Power Co. v. United States, 998 F.2d 1386, 1397-98 (N.D. Fla.
1998).

 In Gulf Power, a case on which the majority relies to show the Commission's order
is a taking, the district court determined that an access fee could adequately compensate for a
taking. See id. A federal law required utility pole owners to allow other utilities to attach wires
to their poles. The pole owners could charge a fee, reviewed by the Federal Communications
Commission, to compensate for the taking. See id. The district court held that FCC review of
the fairness of the fee was constitutional and might be better than original judicial review because
of the FCC's expertise in rate-setting. Id. at 1397-98. The district court also barred pole owners
from filing suit until the FCC set a rate too low to compensate for the intrusion of the wires on
their poles. Id. at 1397.

 The Supreme Court has envisioned that a state-authorized taking by a utility may
be compensated adequately to satisfy the constitution. See Loretto v. Teleprompter Manhattan
CATV Corp., 458 U.S. 419, 441 (1982). The Supreme Court held that a cable television
company's state-approved installations on an apartment building roof were a taking of the building
owner's property. Id. at 424. The Court reversed the New York Court of Appeals' decision that
this was not a taking, but remanded the issue of whether the one-time, one-dollar fee was sufficient
compensation to ameliorate the taking. Id. at 441.

 The rejection of a federal regulation requiring local exchange carriers ("LECs")
to set aside portions of their building for their competitors' equipment does not require rejection
of the Texas Commission's order. See Bell Atl. Tel. Cos. v. Federal Communications Comm'n,
24 F.3d 1441 (D.C. Cir. 1994). The federal regulation required LECs to accept "physical co-location" of competitors' equipment. Id. at 1443. If physical co-location was impossible, the
FCC required the LECs to allow virtual co-location; that is, the competitors could designate the
type of equipment the LECs used in their buildings to service the competitors' customers. Id. 
The appellate court ruled that mandatory physical co-location was a taking; the court did not
decide the nature of virtual co-location. Id. at 1445. The court held the taking unconstitutional,
not because the FCC's compensation scheme was inadequate, but because the FCC was not
constitutionally or statutorily authorized to appropriate funds to supply the compensation; the court
held that an administrative taking not explicitly authorized by Congress was an unconstitutional
drain on the Treasury. Id. The federal constitution's limitations on federal agencies, however,
do not constrain state agencies. Even if they did, or a provision in the state constitution offered
a similar obstacle, the Commission's ruling here allows for compensation for the taking through
rearrangement fees charged to the property owners, customers, or competitors, none of which will
drain the State treasury.


GTE's points of error fail.

 The Commission's proper exercise of its responsibilities and powers in issuing this
order requires the overrule of GTE's points of error and affirmance of the district court's
affirmance of the Commission's order. GTE contends that the Commission erred by finding that
it acted unreasonably and discriminatorily. GTE also argues the district court's affirmance was
error because the Commission lacks the authority to take GTE's property for the use and benefit
of its competitors. GTE further contends that the Commission erroneously determined that FCC
rules and precedent required or authorized it to force GTE to turn over its network cable to the
competitors; instead, GTE contends, federal law preempts the Commission's action.

 State law and the evidence support the Commission's order. Substantial evidence
supports the conclusion that lack of a set procedure in GTE's tariff for determining whether to
relocate a demarcation point led to inconsistency and unreasonableness in GTE's relocation
decisions. (3) The Code provisions enacted in 1995 require the Commission to prevent such
unreasonable interferences with customers' access to competitive services; the Commission's order
eliminates the interference, but balances the costs by allowing the rearrangement fee. The
Commission's pre-1995 refusals to take property are irrelevant to whether the 1995 Act gives it
the power and responsibility.

 Federal law does not require reversal of the Commission's order. The Utilities
Code empowers the Commission to make the order irrespective of whether FCC regulations and
pronouncements supply such power. GTE's argument that the FCC preempted the Commission's
power also fails. GTE cites the FCC's conclusion that states can regulate "inside wire" not
inconsistently with FCC technical standards. The applicability of this conclusion is dubious
because GTE argues that the cables in question are network cable, not inside wire. Further, there
is no showing that the Commission's order is inconsistent with the FCC's technical standards. 
Finally, though GTE argues that the FCC has not interpreted its regulations "to provide for
mandatory customer access to network cable serving multiple customers," GTE does not show that
the FCC prohibits states from doing so. I would overrule all four points of error.



CONCLUSION


 Because I believe that the Commission has not taken anything from GTE and has
provided a means of compensation for any taking that might occur under a revised tariff, I would
affirm the district court judgment affirming the Commission's order.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Powers*

Filed: July 15, 1999

Publish








* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. I also note that federal regulations require that GTE have a reasonable, nondiscriminatory
standard operating procedure for establishing the demarcation point. See 47 C.F.R. § 68.3 (1995). 
The code defines the minimum point of entry as the closest practicable point where the cable either
crosses a property line or enters a building. Id. Where wiring is installed after August 13, 1990, the
telephone company's failure to establish a practice of placing the demarcation point either of the
minimum points of entry frees the premises owner to determine the demarcation points. Id. The
code does not address relocation of demarcation points.
2. The majority does not discuss this fee because it concludes the Commission lacks the power
to take property.
3. I also note that the findings of discrimination and unreasonableness support, but are not
necessary to, the Commission's order. Even if the Commission erroneously found GTE acted
discriminatorily or unreasonably, the relief granted in the Commission's order is prospective and
intended to forestall future discrimination and unfairness. See Tex. Util. Code Ann. §§ 55.002-.003. 
It can stand on that basis without the findings of discrimination and unreasonableness.



eempts the Commission's action.

 State law and the evidence support the Commission's order. Substantial evidence
supports the conclusion that lack of a set procedure in GTE's tariff for determining whether to
relocate a demarcation point led to inconsistency and unreasonableness in GTE's relocation
decisions. (3) The Code provisions enacted in 1995 require the Commission to prevent such
unreasonable interferences with customers' access to competitive services; the Commission's order
eliminates the interference, but balances the costs by allowing the rearrangement fee. The
Commission's pre-1995 refusals to take property are irrelevant to whether the 1995 Act gives it
the power and responsibility.

 Federal law does not require reversal of the Commission's order. The Utilities
Code empowers the Commission to make the order irrespective of whether FCC regulations and
pronouncements supply such power. GTE's argument that the FCC preempted the Commission's
power also fails. GTE cites the FCC's conclusion that states can regulate "inside wire" not
inconsistently with FCC technical standards. The applicability of this conclusion is dubious
because GTE argues that the cables in question are network cable, not inside wire. Further, there
is no showing that the Commission's order is inconsistent with the FCC's technical standards. 
Finally, though GTE argues that the FCC has not interpreted its regulations "to provide for
mandatory customer access to network cable serving multiple customers," GTE does not show that
the FCC prohibits states from doing so. I would overrule all four points of error.



CONCLUSION


 Because I believe that the Commission has not taken anything from GTE and has
provided a means of compensation for any taking that might occur under a revised tariff, I would
affirm the district court judgment affirming the Commission's order.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Powers*

F